·   CHARLES BARRETT *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. CRIMINAL LAW—*when a judgment of conviction will not be reversed.* Where a judgment of conviction depends entirely upon the credibility of the witnesses, the testimony being irreconcilable and on one side or on the other willfully and corruptly false, the Supreme Court will not reverse the judgment, in the absence of material errors of law, unless a reasonable and well founded doubt as to the guilt of the defendants appears from the evidence.

2. SAME—*admitting rebuttal evidence in making out case will not necessarily reverse.* The practice of admitting rebuttal evidence for the prosecution when making out its case is not justified by the fact that counsel for the defendants had stated in his opening statement what he expected to prove, but such course is not, ground for reversal where the defendants are not injured thereby.

3. RAPE—*when a refusal to require prosecution to elect which defendant it will try is not error.* Refusing to require the State's attorney to elect which of the three men indicted for rape he will proceed against, and giving an instruction defining accessories, is not reversible error, where the evidence shows that two of the men, in the presence of the other, forced the prosecuting witness into a closet, and one after another, as they were called, entered the closet and committed the crime.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

A. J. HANLON, for plaintiffs in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, Charles Barrett and Arthur Mc-Murray, were indicted in the criminal court of Cook county, with Nicholas Busch, for rape of Nora Sherrill on Febru-

ary 8, 1905, between seven and eight o'clock in the evening· in the saloon of said Busch at 214 Wells street, in Chicago. Plaintiffs in error were tried, Busch not being present or tried, and they were found guilty and sentenced to the penitentiary.

The question whether the evidence justified the verdict and sentence depends wholly upon the credibility of the witnesses. Their testimony cannot be reconciled upon any theory, and that which was given for one side or the other was willfully and corruptly false. The jury and the trial judge, who were charged with the duty of deciding upon which side lay the truth and upon which side the falsehood and perjury, and who had the best means of deciding the question, concluded that the truth was on the side of the People. The question for us is whether the record shows their conclusion to have been wrong, and that there is a reasonable and well founded doubt of the guilt of the defendants. If it appears that there is such a doubt the judgment should be reversed, but if we cannot say that the doubt exists the judgment must be affirmed, unless there are material errors of law in the record.

Nora Sherrill was a young girl, fifteen years of age. Nicholas Busch was a saloon-keeper and the defendant Barrett was his bar-tender. The defendant McMurray was a friend of Busch and Barrett and a frequenter of the saloon. Nora Sherrill testified that she went to the saloon in the evening of Wednesday, February 8, 1905, between seven and eight o'clock, at the solicitation of Annie Munson, who the evidence shows was a disreputable girl eighteen years of age, who wanted to see Barrett; that the girls sat down at a table with Busch and McMurray, and they each had a small glass of beer; that Barrett called Nora Sherrill to one side and asked her to go to a room with him, and she refused, and said to Annie Munson, "Come, let's go home;" that Annie Munson told her to sit down, and pulled her down on a chair; that Barrett soon called to her, and she

220—20

went where he stood between swinging doors separating the front and back rooms of the saloon; that Barrett seized her and kissed her, and he and Busch pushed her into a dark closet under the stairway, where there was a cot; that Barrett went out and Busch held his hand over her mouth, tore her clothing and had sexual intercourse with her, forcibly and against her will; that Busch then called to Barrett, who came in and Busch went out; that Barrett committed the same act and then called McMurray; that Barrett was slow in going out and she got to the door, when McMurray caught her by the feet and threw her back on the cot and forcibly ravished her; that she then came out and found Annie Munson gone; that one Steve Cassidy then caught her by the arm and tried to get her to go back in the closet with him, but she jerked away and left the saloon; that her hair was down, her face dirty and her clothes torn, and that she went to a dance hall to straighten up and wash, and then went to her home.

The theory of the defense was that this whole story was a pure invention, and the evidence for the defense was that Nora Sherrill was not in the saloon at all. The defendants testified that she was not there, and that they had two other girls visiting them in the saloon that evening, who sat there from six o'clock until one o'clock in the morning, when the saloon closed. The two girls referred to, testified that they were sitting in the saloon all that time, about seven hours, talking with Barrett and McMurray. Annie Munson also testified that she did not go to the saloon with Nora Sherrill, but the record shows that she told different stories at different times. The next day after the alleged rape she went with Nora Sherrill to a police station, where Nora made the complaint in the case, and she was a witness for the prosecution there. The girls were detained at the police station and annex thereto for some days and were quite restive under the restraint, and finally Busch had a separate hearing before a justice of the peace, when Nora said she wanted to dis-

miss the case and was not in the saloon, and Annie testified the same way. Nora testified that she retracted her charge before the justice because she was told that if she persisted in the prosecution she would be sent away and confined, and if she refused to prosecute she would be set free and allowed to go home. On this trial Annie testified that she had dictated a letter to Judge Mack, saying that what she had told on the stand was perjury. She was also a bad character by her own admission, and so far as we can see was entitled to little, if any, credit. Her testimony was that the charge was a scheme of Nora to blackmail Busch because he had had intercourse with her and promised her a dollar and then refused to pay it; that Nora promised her part of the money; that they went to the saloon to see Busch, but he was not in, and they then went to the police station. It will be seen that her story does not fit the case or the theory of the defense, since the scheme was only to blackmail Busch and the complaint was against all three. Busch was the only one that Nora charged with cheating her, according to Annie's testimony. It is also improbable that they went to the police station without first seeing Busch after going to the saloon to see him.

The testimony that two girls sat in the saloon for about seven hours, and until one o'clock in the morning, not drinking and without any business there, seems rather strange, and the testimony for the defense all came from disreputable and apparently unreliable witnesses. We can easily see how the jury and trial judge might have been fully justified in refusing to believe any of them, and if that is so, the fact that there were a number of them makes no difference.

There were facts and circumstances corroborating the testimony of Nora Sherrill. She was examined the next day, February 9, by a doctor, who found the parts swollen and inflamed and the hymen ruptured and a rupture of the labia minor. Barrett testified that she was reputed to have venereal disease and for that reason he would not have had

intercourse with her in any event, but the examination referred to, and another on March 1, demonstrated that she did not have such disease. When the police officers went to the saloon they found her description of the place where she said the crime was committed, correct. There was the dark room, with the cot and surroundings just as she stated, and there was no evidence of any other acquaintance with the situation on her part. Annie Munson testified that she and Nora went to an assignation or rooming house Monday night, February 6, with two men and stayed with them all night, and that she and her companion registered under the assumed name of Johnson, and Nora and Walter Lowe were registered as Frank Kane and wife. Another witness testified that the man Nora stayed with was Steve Cassidy. Nora denied all the charges of immorality or intercourse with other men before this occasion, and there were many inconsistencies in the evidence for the defense as to what occurred at the assignation house.

It will be seen from this recital of the more material parts of the evidence, that the jury could only decide the issue upon their own judgment as to the credibility of the witnesses, and it would serve no good purpose to go further into the details of the evidence. There is no fact or circumstance proved by any witness that we can rely upon as truthful and unprejudiced, from which we can say that the story of Nora Sherrill is a fabrication. There is much testimony at variance with hers, but it comes from the defendants and their associates, who, so far as we can see, are without moral standards, and whom the jury and trial judge might rightfully disbelieve. They heard the witnesses, observed their demeanor, and could judge much better than we how much credit they were entitled to. We see no good reason for supplanting their decision with a different one merely because of the number testifying for the defense.

No error prejudicial to the defendants occurred on the trial. That part of the testimony of the doctor which showed

that Nora did not have venereal disease, and the testimony of a witness that one of the witnesses for the defendants did not work at a certain place, were admitted in making out the case for the People and were properly evidence in rebuttal, but no harm came from the rulings. The evidence seems to have been admitted at that time because counsel for the defendants had stated in his opening address that he would prove certain things, and the State's attorney claimed the right to disprove them. That was not a good reason for departing from the usual and proper course, but the defendants were not injured in any way by having the evidence admitted before their own contradictory evidence.

It is contended that the court erred in refusing to compel the State's attorney to elect which defendant he would proceed against, and also in giving an instruction defining accessories, for the reason that the evidence did not show that either defendant aided, abetted or assisted the other, or advised, counseled or encouraged the other, and if the crime of rape was committed it was committed by the defendants separately, and there were two distinct and separate crimes. The evidence of Nora Sherrill was that all three men were present; that Busch and Barrett, in the presence of McMurray, forced her into the closet, and one after another, as they were called, the defendants entered the closet and committed the crime. While they could not commit the act at the same time, the evidence tended to show such concert and agreement in purpose and action as justified the rulings; and clearly Barrett was an accessory of McMurray's in calling him in to commit the crime.

There was no error in giving or refusing other instructions, and the judgment is affirmed.

*Judgment affirmed.*