No. 13,806.

DE SALVO *v.* THE PEOPLE.
(56 P. [2d] 28)

Decided March 9, 1936.

Mr. CHARLES F. KEEN, Mr. V. G. SEAVY, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

RUSSELL De Salvo, alias Bullhead, was found guilty of forcibly raping Matilda Zupancic, to whom for the sake of brevity we shall refer as Matilda. A motion for a new trial was denied and the defendant was sentenced to imprisonment in the penitentiary for not less than twenty-five nor more than thirty-five years.

On the night of March 25, 1934, De Salvo (alias Bullhead), Joe Carlino (alias Candy), Matilda, then eighteen years of age, a man whom we shall call Joe and a girl whom we shall call Anna were at the Sunset Inn, in or near Pueblo. Matilda told them that she had to go

home. They got in an automobile. De Salvo drove. Instead of taking Matilda to her home, he drove out into the country to a secluded place, where he stopped the automobile. It was about 1:20 o'clock in the morning of the 26th. Matilda vainly requested to be taken home. She then attempted to get out of the automobile, but Carlino pushed her back. De Salvo, Joe and Anna got out of the automobile. At that hour and place there was nothing for them to do or see. They obligingly withdrew to a distance of about sixty or seventy feet and waited, for no apparent reason other than to enable Carlino to rape Matilda, which he proceeded to do. When Carlino attacked her she screamed and fought, whereupon Carlino repeatedly struck her in the face with his fist. During the struggle Carlino called to De Salvo to come and take his eyeglasses, saying, ''she wants to break them.'' De Salvo took them. It is a reasonable inference that he did so to enable Carlino to accomplish his purpose with the least possible inconvenience and injury to himself. Anna testified that she heard Matilda scream. However, nobody went to her relief. Apparently the proceedings were entirely satisfactory to everyone but the victim. After Carlino had succeeded in his efforts, he called to De Salvo to come. When De Salvo reached the automobile, Carlino got out and De Salvo entered. Matilda attempted to leave, but De Salvo pulled her back and started hitting her in the face. She struggled to the utmost of her strength to prevent him from accomplishing his purpose. She screamed repeatedly, but her screams seem to have fallen upon deaf or unwilling ears. He repeatedly struck her in the face, drawing blood. Finally, but not without a struggle, he succeeded in raping her. After the encounter Matilda's face was beaten up, her lip was swollen and bleeding, and she had ''two black eyes.'' Four photographs showing the condition of her face were introduced in evidence.

Matilda was taken to her home, arriving at about 2:15 o'clock in the morning. On the way De Salvo told

Matilda not to say anything to the police. Her parents were asleep, and she did not want to wake them up. Moreover, her mother was ill and Matilda did not want her to see the condition she was in. She waited until 6 o'clock and then told her mother, sister and brother about the attack. They went to police headquarters that morning, and there, at about 9:30 o'clock, Matilda complained to officer McDonald of the attack.

Some of the foregoing facts were undisputed. The rest were testified to by Matilda, and her testimony was corroborated in important particulars by other witnesses and by the photographs. De Salvo denied those parts of the testimony that tended to incriminate him. The jury and the court heard the evidence and observed the appearance and demeanor of the witnesses while on the stand, and were better able than we are to judge of their credibility. The jury believed the testimony in behalf of the people and disbelieved that in behalf of the defendant, and the court, by denying the motion for a new trial, approved the findings of the jury. The foregoing statement of facts, therefore, must be taken to be a true statement of what occurred. The evidence amply supports the verdict of guilty and the judgment based thereon.

We now shall consider the points relied upon to reverse the judgment.

1. It is said that the court erred in denying defendant's motion for a directed verdict. It is not claimed that the evidence was insufficient to support the verdict of guilty. The objection is of a different kind. The information charged that De Salvo and Carlino committed the rape. Carlino fled and never was arrested. Defendant's counsel admit that it is proper to charge two persons as principals where one commits the rape and the other is an accessory, but say that the act of rape cannot be committed jointly. The district attorney, upon being required to state his position, said that he expected to prove that De Salvo committed the act. It is con-

tended that there was no evidence that Carlino was an accessory to De Salvo's crime, and that an information charging two persons with the commission of a joint offense will not be sustained by proof that each committed a distinct offense. The point is not well taken. The evidence establishes the fact that Carlino stood by and aided, abetted and assisted De Salvo in committing the crime; he therefore was an accessory during the fact. C. L. §6645. The fair inference from the evidence is that the two men took Matilda to a secluded place for the very purpose of debauching her; that, acting in concert, they accomplished their purpose; and that after raping her himself, Carlino called to De Salvo to come, and then got out of the automobile so as to enable De Salvo to rape the girl.

2. It is contended that it was error to admit the photographs. We cannot sustain the contention. The photographs were taken only two days after the assault, and they were identified as correctly showing the condition of Matilda's face as it existed immediately after the assault. In the absence of the photographs, the jury might have thought that the extent of the injuries was exaggerated by the witnesses. The pictures corroborated the testimony of Matilda. The fact that she was unable to state exactly how much of the injury was inflicted by De Salvo, and how much by Carlino, does not, in the circumstances, render the photographs inadmissible.

3. Equally unmeritorious is the contention that Matilda's recent complaint to officer McDonald was inadmissible. It is said that recent complaint to her family already had been testified to without objection, and that evidence of only one recent complaint is permissible under the law. We know of no such principle of law. The complaint to McDonald was a recent complaint within the meaning of the law, and the evidence thereof fully met all legal requirements. The court did not err in admitting it.

■ 4. We cannot sustain the objection that the court erroneously curtailed the cross-examination of Matilda. Counsel was permitted to question her over and over again and at great length concerning the details of the assault. Of course, wide latitude should be allowed in the cross-examination of the prosecuting witness in a rape case. While we would not say that in the present case counsel went beyond the permissible limit, we are satisfied that the trial court was justified, in the exercise of a sound discretion, in ruling that counsel should not continue such examination along the same line and repeat again questions that he already had asked many times.

An examination of the record satisfies us that De Salvo was fairly tried and fairly convicted.

The judgment is affirmed.