(No. 24103.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GRIFF FALLEY *et al.* Plaintiffs in Error.

*Opinion filed June 16, 1937.*

LINDAUER & LINDAUER, and A. B. DAVIS, for plaintiffs in error.

OTTO KERNER, Attorney General, LOUIS P. ZERWECK, State's Attorney, and A. B. DENNIS, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Griff Falley, 30, and Carol Phelps, 28, were found guilty of rape, by a jury in the circuit court of St. Clair county, and each was sentenced to twenty years' imprisonment. They claim the commission of numerous errors during the trial and ask this court to reverse the judgment.

The testimony at the trial shows that on July 10, 1936, Gus Hentzel, of Belleville, took his friend, Margaret Arbogast, for an automobile ride about 10 o'clock in the evening. They parked along a road near Belleville and while engaged in conversation two men approached the car from the rear. One of these men, at the point of a gun, forced Hentzel from the steering wheel and both men entered the car. One of them drove the car to a secluded place along a dirt road near a railroad embankment and each stranger in turn raped Miss Arbogast in the rear seat of the car. The evidence shows that Phelps had the gun and forced Hentzel to walk away from the car while Falley ravished Miss Arbogast and that after Falley had finished with Miss Arbogast he took the gun, forced Hentzel to again walk away and then held the gun on Hentzel while

Phelps assaulted Miss Arbogast. After both had raped the girl, they drove the car to a place on the hard road where they put Hentzel and the girl out of the car. The two men took what money they found on Hentzel, and escaped with his automobile, which was found the next day in East St. Louis. On July 15, Falley was arrested by police officers in St. Louis, and Phelps was arrested in East St. Louis and taken to St. Louis to the same police station where Falley was held. On July 16, Hentzel and Miss Arbogast were taken to St. Louis and viewed a third man and the two defendants. Hentzel and Miss Arbogast identified Falley and Phelps as the perpetrators of the rape and robbery. That evening a warrant charging defendants with rape was sworn out before a justice of the peace in Belleville. On July 17, the warrant was served and defendants were turned over to Illinois police who brought them to Belleville without the intervention of extradition proceedings. The indictment was returned on September 28 and the case called for trial on November 16. At this time defendants moved their discharge for want of prosecution under the provisions of the statute requiring the trial of defendants incarcerated in jail within four months from the date of commitment. (Smith-Hurd Stat. 1935, chap. 38, par. 748.) After a full hearing on the question the motion to discharge was overruled and the court proceeded to hear evidence. The only defense interposed by way of evidence at the trial was an alibi.

The first assigned error is based upon the failure of the trial court to discharge defendants because, as alleged, they were not brought to trial within four months after their commitment. The evidence produced in the contest over this motion to discharge disclosed that the police of St. Louis had arrested Falley and John Phelps, a brother of defendant Carol Phelps, as suspects for investigation of crimes committed in St. Louis. Defendant Carol Phelps was arrested in East St. Louis and delivered to the police

of St. Louis for the same reason, and the pictures of the two defendants were published in a St. Louis newspaper. A deputy sheriff in Belleville, testifying for the People in contesting the motion to discharge, said that, on the night of July 15, he read an account of the arrest in the newspaper and noticed the pictures of the two defendants. What he read, and what he saw in the newspaper, led him to believe the defendants were the two men wanted for the robbery of Hentzel and the rape of Miss Arbogast. He said he came to this belief because the descriptions given by the victims of the men who had robbed him and assaulted her, fitted the two defendants. When Hentzel and Miss Arbogast identified the two defendants on July 16, the witness ordered the St. Louis police to hold the prisoners. In the afternoon of that day warrants were issued and were delivered to the police department on the morning of July 17, and the witness took delivery of the prisoners on the afternoon of that day. The witness testified that he did not notify the police department of St. Louis that defendants were wanted for the crimes of robbery of Hentzel and the rape of Miss Arbogast, as he did not know, prior to July 16, that these particular men were wanted for these crimes, since both were held as suspects in other criminal matters. Defendants contend that the four months' limitation started to run in this case from July 15, when they were arrested, while the People contend it did not start until July 16, when defendants were identified by Hentzel and Miss Arbogast and the deputy sheriff of St. Clair county ordered the two defendants held by the St. Louis police for the specific robbery of Hentzel and the rape of Miss Arbogast.

When the defendants were first arrested by the police authorities of St. Louis and East St. Louis, they were not in anywise connected with the robbery of Hentzel or the rape of Miss Arbogast. This is borne out by the fact that Phelps, after his arrest by East St. Louis police, was de-

livered to the police authorities in St. Louis. If Phelps had been arrested by the East St. Louis authorities because they believed him to be involved in the crimes against Hentzel and Miss Arbogast, such an arrest would have been made because Phelps fitted the description of one of the men wanted on these particular charges. The fact of the delivery of Phelps to the police authorities of St. Louis is conclusive evidence that the police did not then connect him with these particular crimes. It was only after the positive identification of defendants on July 16 by Hentzel and Miss Arbogast, that they were held as the alleged perpetrators of these particular crimes. The two defendants were not committed by virtue of any warrant until July 17, when it. was served upon them. Until that warrant was served they were not held in prison on any sworn complaint. On July 16, the deputy sheriff of St. Clair county made the request that defendants be held as the definitely designated perpetrators of the two crimes in Illinois. Four months had not elapsed from that time until defendants were brought to trial on November 16, 1936. In any view taken of the matter respecting the time the four months' limitation started to run, the theory of defendants must fall. The trial court therefore did not err in overruling the motion.

Defendants contend they were unlawfully joined in one indictment, notwithstanding the fact they are charged with raping the same person by individual acts of rape immediately following each other. They say that, on account of the very nature of the crime of rape it cannot be a joint, simultaneous act, and that it is necessarily a separate, individual act. Defendants urge that if they had been acquitted on a charge based on one of the assaults, such acquittal could not be pleaded by both of them in bar of prosecution for the other assault, for there were two distinct acts constituting two distinct crimes. In support of this they rely upon *People* v. *Richie,* 317 Ill. 551. That

case is not similar in facts because there were two separate and distinct crimes, each committed by different defendants at different times when the other defendant was not present, and without any apparent concert of purpose or design. In the case at bar the two defendants aided each other in the commission of the crime, and it was proper for them to be indicted and tried together. If the defendants had a common design to commit the crime, whatever one of them did in pursuance of the act was the act of both, and both would be guilty. (*People* v. *Powers,* 293 Ill. 600; *People* v. *Bogue,* 319 id. 294.) In *People* v. *Marx,* 291 Ill. 40, five men were indicted for the rape of one woman and their conviction was confirmed by this court. In *Barrett* v. *People,* 220 Ill. 304, three men were jointly indicted for raping one woman, and there, also, it was contended that there were separate and distinct crimes. In reviewing their conviction, this court, in part, said: "While they could not commit the act at the same time, the evidence tended to show such concert and agreement in purpose and action as justified the ruling." It was lawful for the State's attorney to charge the two defendants with the crime of rape, in one indictment.

Exceptions have been taken to four instructions given in behalf of the People. First, it is complained that the concluding words of the second instruction given for the People were erroneous. If only that portion of the instruction complained of had been given, there might be some merit to the complaint, but when the entire instruction is read, together with the defendants' eleventh instruction, it will be seen that the jury was fully instructed as to the tests to be applied to the testimony of both defendants. However, the instruction in question was approved in the case of *People* v. *Meyer,* 289 Ill. 184. The People's third and fourth instructions, in explanation of the words "reasonable doubt," have been criticised by the courts, but a reading of the defendants' fifth instruction shows that they

also requested the court to define the term, and when the People's fourth instruction is read in connection with defendants' fifth instruction, it will be seen that the jury could not have been mistaken as to the meaning of the term. People's fifth instruction told the jury that, before the defense of an alibi could become available to defendants, the proof must cover the whole of the time of the commission of the crime. Objection to this instruction is without merit, as the instruction has been approved in *People* v. *Gasior,* 359 Ill. 517; *People* v. *Herbert,* 361 id. 64, and *People* v. *Schladweiler,* 315 id. 553. When the defendants' ninth, thirteenth and fourteenth instructions are read in connection with the People's fifth instruction, it will be seen that the jury was accurately instructed on that subject, and that defendants have no just grounds for complaint. The rule is well established that the instructions are to be read as a series, and that, if all of the instructions, when considered as a series, fairly and correctly state the law, no error has been committed. The record here reveals no harmful error in instructions to the jury.

Objections to certain portions of the evidence have been argued, and alleged inconsistencies in the testimony of Hentzel and Miss Arbogast have been pointed out. We have considered all of these matters but have found none of them of any serious import. The identification of the two defendants by both Hentzel and Miss Arbogast was positive and convincing. While numerous alibi witnesses testified for defendants, they failed to convince the jury that they had seen defendants at such hours of the day in question as would have made it impossible for them to have committed the crime. We are satisfied that the defendants had a fair trial, free from substantial error, and under these circumstances we have consistently held that we will not substitute our judgment for that of the jury.

The judgment is affirmed.      *Judgment affirmed.*