WATSON *v.* STATE.

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

O. M. Connatser, George G. Allen, and Thad D. Smith, all of Sevierville, for plaintiffs in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

In the Criminal Court of Sevier County, defendants Watson, Floyd and Shultz, were jointly indicted for rape on the body of Emma Ogle. They were found guilty and their punishment fixed at 20 years in the State penitentiary. They have appealed and assigned errors.

At about 9:00 o'clock in the evening of November 9, 1945, Emma Ogle, who is 26 years old, and her sister, Frances Ogle, 24 years old, were returning from a picture

show in Gatlinburg, to their home on the Roaring Fork Road, about one-half a mile from town. An automobile passed them and came to a stop. When they overtook the automobile, three men, passengers in the car, asked them if they would not get in the car and take a lift home. The young women refused a ride with thanks. The three passengers in the car were the defendants Shultz, Watson and Floyd. They got out of the car and forced the girls to get in it. Schultz drove the car to the intersecting road where the girls normally alighted to return to their home. They asked that the car be stopped there so that they could go home, but Schultz accelerated the speed of the car and drove on for about one-half mile past the intersection. There Emma Ogle had succeeded in opening a door and getting out on the running board. She threatened to jump and the car was finally halted. The two girls got away and ran some distance down the road toward their home. They were overtaken and a scuffle ensued. Frances Ogle succeeded in making her escape. Emma Ogle was overcome and dragged back to the car.

.The car was then driven on down the road another mile and there stopped apparently on account of some mechanical difficulty.

At that place Emma Ogle was assaulted and raped by each of the three defendants. The car proceeded for another mile or more, and in about 30 or 40 minutes Emma Ogle was again raped by each of the three defendants.

Floyd and Schultz then drove away in the car leaving Emma Ogle with the defendant Watson, who took her to the home of a friend of his named Whaley, and there procured Whaley to return the prosecutrix, Emma Ogle, to her home. Watson rode in the car.

When Frances Ogle had returned home she had reported to her mother that Emma Ogle was being forcibly held in the car by the three men. When Emma Ogle, some hour and a half later, reached home she immediately reported to her mother full details of the assault and rape. She was barefooted, her clothing disarranged and torn and her body bruised and bleeding, showing beyond peradventure that physical violence had been used upon her. She had one slipper in her hand when she returned home, but had lost the other slipper and her coat, as well as the belt from her dress, during the time that she had been with the defendants. Fragments of the belt, as well as the torn and muddy coat and missing slipper, were later found and introduced, with other evidence that before the attack the garments had not been torn but were in good condition.

The mother immediately notified the law officer, Horner, giving him an account of the crime and a description of the defendants. Horner succeeded in arresting all three of the defendants and bringing them before Emma and Frances Ogle the next day.

The young women positively identified the defendants and in the presence of Horner, Emma Ogle accused them of the crime. Defendants Shultz and Floyd admitted their guilt, but Watson remained silent under the accusation, a circumstance to be considered against him under all the authorities.

The day after the crime Emma Ogle was taken by her mother to a doctor for a medical examination which disclosed that her body was bruised, her feet and legs cut, and her genital organs so inflamed and irritated as to support her account of what had happened. Other evidence of sexual intercourse was lost by douches which

she took on the night of the crime at her mother's direction, to avoid venereal disease.

A witness, Shaw, who lived about 350 yards from the point on the highway where the young women had tried to escape, testified that at about the time of the night when, according to the prosecutrix, the escape had been attempted, he heard female screams for help, and thinking there had been an automobile wreck, went to his home to secure a flashlight. On his return, all was quiet and he made no further investigation. This witness tended to support Emma Ogle in proving that she had been forcibly abducted.

The defendants Shultz and Floyd admitted that they had had sexual intercourse with the prosecutrix, but insisted that no force had been used against her and that she had been entirely willing. However, in addition to the other articles which Emma Ogle had lost during the assaults, she had reported that Shultz had torn her wrist watch off while he was assaulting her. The watch, with the strap broken, was found by Horner in a car where Shultz had tried to hide it and Emma Ogle had never been a passenger in that car.

The defendant Watson denied that he had had sexual intercourse with Emma Ogle, but asserted that she had offered herself to him for that purpose. He testified that she had drunk beer with the defendants and was intoxicated when he took her home in Whaley's car. He had loaned her his shoes and coat, and according to his account, offered her no indignity whatever.

On the record thus made, a clear issue of fact was presented to the jury. On the one hand was the account of Emma Ogle charging violent assault and rape. She was supported by the condition of her body and clothing and, in part, by the testimony of her mother, her sister, and

the witness Shaw. On the other hand was the bare denial of the defendants, which was, we think, discredited even by the probabilities of human conduct and behavior.

The verdict was supported by a preponderance of the evidence and the fifth assignment which challenges the judgment on the sufficiency of the evidence, is overruled.

There are four other assignments.

■ The first and third present the same proposition and may be considered together. They assert that since it is physically impossible that two or more persons, simultaneously, commit rape on the same female, and therefore the joint indictment of three defendants here was duplicitous, and the verdict returned on such indictment, void.

It is not questioned that appropriate motions and exceptions by the defendants had been interposed during the trial, to warrant their making this attack. However, we think the facts here present an exception or modification of the rule for the application of which defendants contend. Here were three men jointly engaged on a criminal enterprise which commenced at about 9:30 in the evening and ended before midnight. All three were together during the entire period. Each of them was either a principal or an accessory at each criminal act. Competent evidence against one was evidence against the others. Whether as principal or accessory, they were equally guilty, Code sec. 10758. Under such facts, a joint indictment of several defendants is unobjectionable:

". . . , *and, as in the case of rape, where it appears that two or more persons acted together, aiding and assisting one another in the perpetration of successive rapes, or that the one committed the act and the other did not, but such other stood by and aided and assisted*

*the one in the commission of such act, they may be jointly charged with the commission of such act.''* (Italics ours.) 42 C. J. S., Indictments and Informations, sec. 159, page 1108. *De Salve* v. *People,* 98 Colo. 368, 56 P. (2d) 28; *People* v. *Falley,* 366 Ill. 545, 9 N. E. (2d) 324; *People* v. *Musial,* 349 Ill. 516, 182 N. E. 608; *Nolan* v. *Commonwealth,* 290 Ky. 482, 161 S. W. (2d) 593; *State* v. *Burlison,* 315 Mo. 232, 285 S. W. 712.

We have no Tennessee authority exactly in point. The Tennessee cases cited by defendants furnish no authority for solution of the question presented. They are: *State* v. *Roulstone,* 35 Tenn. 107; *State* v. *Wilson,* 115 Tenn. 725, 91 S. W. 195.

In the *Roulstone Case, supra,* the offense was uttering obscene words, and in the *Wilson Case, supra,* perjury, and it was properly held that a joint indictment of two or more for these offenses, was duplicitous. We think the facts here are entirely different.

The exact distinction has been made in Illinois and other jurisditions, in rape cases. In the case of *People* v. *Richie,* 317 Ill. 551, 148 N. E. 265, there was a joint indictment of two men for the rape of the same female. It is true that the crimes were committed on the same night and a very short interval of time intervened between them, but both defendants were not present at the commission of either offense, and neither was shown to have acted in concert or agreement with the other. ''A'' first took the victim from a road house, raped her and brought her back. ''B'', without knowledge or help of ''A'', at a later hour the same night, took the same woman out and committed the same crime. The joint indictment was properly held duplicitous. Clearly that is not the situation before us here.

On the other hand, in the case of *People* v. *Falley*, 366 Ill. 545, 9 N. E. (2d) 324, 326, the same Illinois court held that a joint indictment of two defendants for rape was not duplicitous on the following facts: The two defendants had held up a man and his female companion while they were parked in an automobile on a highway. Each of the defendants raped the woman while the other held the man off at the point of a pistol. The rule is well stated in the following excerpt from the opinion:

"Defendants contend they were unlawfully joined in one indictment, notwithstanding the fact they are charged with raping the same person by individual acts of rape immediately following each other. They say that, on account of the very nature of the crime of rape it cannot be a joint, simultaneous act, and that it is necessarily a separate, individual act. Defendants urge that if they had been acquitted on a charge based on one of the assaults, such acquittal could not be pleaded by both of them in bar of prosecution for the other assault, for there were two distinct acts constituting two distinct crimes. In support of this they rely upon *People* v. *Richie*, 317 Ill. 551, 148 N. E. 265. That case is not similar in facts because there were two separate and distinct crimes, each committed by different defendants at different times when the other defendant was not present, and without any apparent concert of purpose or design. In the case at bar the two defendants aided each other in the commission of the crime, and it was proper for them to be indicted and tried together. If the defendants had a common design to commit the crime, whatever one of them did in pursuance of the act was the act of both, and both would be guilty. (Citing many cases.) In *Barrett* v. *People*, 220 Ill. 304, 77 N. E. 224, 226, three men were jointly indicted for raping one woman, and there, also,

it was contended that there were separate and distinct crimes. In reviewing their conviction, this court, in part, said: 'While they could not commit the act at the same time, the evidence tended to show such concert and agreement in purpose and action as justified the rulings.' It was lawful for the state's attorney to charge the two defendants with the crime of rape, in one indictment." *People* v. *Falley*, 366 Ill. 545, 9 N. E. (2d) 324, 326.

"A joint indictment may be found where the same evidence as to the act which constitutes the crime applies to all the persons indicted . . . " 27 Am. Jur., Indictments, sec. 123, p. 682.

▋ The validity of the objection to the joinder in a single indictment of several offenders or offenses depends on whether such practice does or does not actually prejudice or embarrass the accused in making their defense. *State* v. *Atchison*, 71 Tenn. 729, 731, 31 Am. Rep. 663.

We think, for the reasons stated, there was no such prejudiced or embarrassment here, and the first and third assignments are overruled.

The second assignment of error is as follows:

"The Court erred in overruling defendants' motion that the State be required to elect as to which alleged act and by which defendant and at what place they were relying upon; and that if the State relied upon an alleged criminal assault by one of the said defendants for a conviction as the principal and the conviction of the other defendants as accessories, that the State be required to elect as to which defendant it insisted should be convicted as principal and which as accessories.".

It will be observed that this assignment is, so to speak,

in two counts: That the Trial Judge erred in refusing to require the State to elect (1) between the six acts of rape, and (2) between the three Defendants.

██ The principle underlying the rule of election is correlative with the rule as to joint indictment. Both are invoked to enable the accused to make defense without surprise or uncertainty. *Vinson* v. *State,* 140 Tenn. 70, 72, 203 S. W. 338; *Nash* v. *State,* 167 Tenn. 288, 292, 69 S. W. (2d) 235.

There is no reason for the rule where the evidence is competent and relevant to all the offenses and all the defendants as it was here. The primary purpose for requiring an election is to avoid the possibility that some jurors should find the accused guilty of one act and other jurors find the accused guilty of another separate and distinct offense. *Holt* v. *State,* 107 Tenn. 539, 64 S. W. 473.

██ Under the facts here in evidence, all three defendants were either guilty or innocent of a continuing concerted criminal enterprise, the abduction and rape of a female, which commenced at 9:30 p. m. and lasted for 2½ hours. The continuous criminal action was that of all three of the defendants, who were all present and all acting during all of that time. In view of Code sec. 10758, it was immaterial whether any one of the defendants was charged as principal or accessory. They were equally guilty or equally innocent under the evidence.

There is no suggestion that any one of the defendants was surprised or otherwise prejudiced in making his defense on account of the failure to elect, nor can we conceive that there was any such surprise or prejudice.

Assignmet of error No. 2 is overruled, as is assignment of error No. 4, which presents the same question in different words.

All assignments of error are overruled and the judgment is affirmed.