TURNER *et al. v.* STATE.

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

310

HERBERT H. MOSES and LEROY MCGREGOR, both of Nashville, for Turner.

Z. ALEXANDER LOOBY, of Nashville for Scribner.

K. T. McCONNICO, JR., of Nashville, for Taylor.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

In the Criminal Court of Davidson County, the defendants, Turner, Scribner and Taylor, were convicted of rape and sentenced to death by electrocution. The case has been argued before us orally and separate briefs with numerous assignments of error have been filed to support the appeal of each defendant.

Some six months prior to the night of the crime, Miss ''A'' and Miss ''B'', young white girls under twenty years of age, and Dillard (Steve) Morris, a white man of about the same age, had moved to Nashville from an adjoining county to attend a Nashville business college. Morris is a cousin of Miss ''A'' and Miss ''B'' was her

roommate in a boarding house in the Hillsboro community. At about 10:30 in the evening of August 7, 1947, after seeing a moving picture, the three young people walked up on Capitol Hill in Nashville and were sitting on the grass on the north side of the Capitol watching the lights of the Professional Baseball Park when they were surrounded by the three defendants and at the point of a pistol in the hand of defendant Turner forced to go down on the hillside north of the Capitol, and in a flat open space near the Capitol greenhouse, to lie face down on the ground. There Miss ''A'' and her companions were searched and robbed of their money and jewelry.

The defendant Scribner then forced Morris at pistol point into an old tunnel which was near by and stood guard over him there while the other two defendants raped the two girls. Scribner was then relieved of guarding Morris by Turner or Taylor and Scribner returned to the girls and raped Miss ''B''. However in view of certain assignments of error which we shall presently consider, it is necessary to state that the prosecution and conviction of the defendants in the present case was for the assault on Miss ''A'' and Scribner did not rape Miss ''A'' but that both Turner and Taylor raped her while Scribner was holding Morris off with a pistol. After the defendants had escaped from the scene, the two girls returned to their boarding house in a taxicab and immediately informed their landlady of all that had occurred. She made a report to the police, who in the course of their investigation of the scene of the crime, found Morris and released him from the tunnel.

On the same night and some two hours after the assaults, Miss ''A'' was taken to the Nashville General Hospital and there underwent a physical examination at

the hands of Dr. J. P. Brooks, who testified, without objection, that his examination disclosed recent sexual intercourse and that from tears and lacerations of the vagina and hymenal ring that the vagina had been penetrated and that the young lady had been a virgin prior to the intercourse.

The two young women described their assailants to the police as being three young negro men and Miss ''B'' reported that among the articles stolen from her was a wrist watch which she also described. Miss ''A'' also told police that one of her assailants was wearing a bright shiny ring with a square setting which was unusual and had attracted her attention.

In the early morning hours of August 20th, almost two weeks after the crime, Robert Justice, a former policeman, but at the time attached as officer to the Nashville City Court was cruising in his automobile some three or four blocks from the Capitol when his attention was drawn to a young Negro who with a handkerchief covering the lower part of his face ran across the lights of his automobile. He pursued the man who was the defendant Turner, and after a struggle in which the negro tried to draw a gun, he made the arrest. From information secured from Turner, officer Justice with two other Nashville policemen arrested the other defendants Scribner and Taylor.

Before noon of August 20, Dillard Morris, Miss ''A'' and Miss ''B'' all positively identified as the assailants of August 7, 1947, the defendants Turner, Scribner and Taylor. At the time of this identification, the defendant Taylor was wearing the ring that Miss ''A'' had reported to the police. The watch stolen from Miss ''B'' was, on information secured from the defendants, recovered from

a Negro woman to whom it had been given by the defendant Taylor. At the trial the watch was introduced and identified and the Negro woman testified how it had come into her possession from the defendant Taylor.

██ ██ In the middle of the day on August 20, sworn statements in question and answer form were made by Taylor and Scribner in the office of the Attorney General. That official was present and, after fully advising the accused of their Constitutional rights, conducted the examination. An Assistant Attorney General acted as the stenographer. He testified that the statements were taken by him in shorthand and later transcribed on the typewriter; that the statements met all legal and Constitutional requirements, and that they had been accurately transcribed by him. Other persons who were present at the examination testified that the statements had been made and freely and voluntarily made and that they had not been induced by any coercion or promise of immunity. At the trial, when the statements were about to be introduced, there was objection. The Judge followed the approved practice (*Wynn* v. *State*, 181 Tenn. 325, 181 S. W. (2d) 333) of retiring the jury and hearing full testimony of all facts and circumstances surrounding the taking of the statements. Thereafter His Honor the Trial Judge held the statements admissible. The admission of the statements is the basis of several assignments of error, but we find no merit in any of them. Not only was the evidence of coercion and brutality on the part of the law officers unconvincing, but the contents of the statements themselves furnishes very strong internal evidence that they were freely and voluntarily made and made with no coaching or suggestion. In the statements taken, both Turner and Scribner admit that they were

on Capitol Hill on the night of the crime and that they were present at the time the crimes were committed but both deny that they committed rape or participated in the fruits of the robbery. Turner says that he was there because he was terrorized and intimidated by Scribner and Taylor, and Scribner says that he was acting similarly under duress from Turner and Taylor. The importance of this is not that this part of the story of Turner or Scribner is credible in the light of other evidence but that if the statements had been coerced the coercing officers would have accepted nothing less than unconditional confessions of guilt.

■■ To rebut the State's case all three defendants introduced witnesses to prove an alibi. None of the evidence is convincing because in no one of the three attempts at an alibi is there any proof that the night of August 7th was remarkable or memorable to distinguish the events of that night from those of any other night in the minds of the witnesses. The trial was held in November, three months after the events of August 7th, and some fact or facts to make that night remarkable and distinguishable from all other nights was necessary to make evidence of the alibi reasonable and credible. In addition, there were many discrepancies and contradictions in the details of the stories of the several witnesses. The witnesses for Turner and Scribner were members of their immediate families and the only witness for Taylor was the woman with whom he had been living in adultery at the time. The effect to be given by the alibis as they were set up here, depended entirely upon the credibility of the supporting witnesses and the determination of their credibility and the weight of their testimony was exclusively within the province of the jury.

*Warren* v. *State*, 178 Tenn. 157, 156 S. W. (2d) 416; *Stinson* v. *State*, 181 Tenn. 172, 180 S. W. (2d) 883.

█ Several of the assignments of error are directed at the action of the Trial Judge in refusing a motion for a severance. The question here is not whether the Trial Judge abused his discretion, but whether his action in refusing a severance resulted in prejudice to the defendants. *Woodruff* v. *State*, 164 Tenn. 530, 538, 51 S. W. (2d) 843.

█ The facts of this case as we find them, present a common criminal enterprise in which all three defendants joined and acted. From the time that Turner pointed his pistol at Miss ''A'' and her companions and forced them down the north side of Capitol Hill until two hours or more later when the girls were released and went home, all three of the defendants played active criminal roles in the joint concerted criminal enterprise and were equally guilty as principals of the crimes committed. Code Section 10758; *Watson* v. *State*, 184 Tenn. 177, 186, 197 S. W. (2d) 802; *Woodruff* v. *State, supra.*

It follows that all competent and relevant evidence of events and acts occurring during the enterprise, which were admissible against any one of the defendants, were admissible against all three of them and that a joint trial was not, therefore, prejudicial.

''. . . It may have been to the interest of each that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The state, as well as the persons accused, is entitled to have its rights protected, and, when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial,

unless to do so would unfairly prejudice the rights of the defendants. No such prejudice appears when the crime charged is the result of a clearly proven conspiracy against which no defense is offered in evidence." *Woodruff* v. *State*, 164 Tenn. 533, 538, 51 S. W. (2d) 843, 845.

█ Scribner assigns error on the action of the Trial Judge in admitting evidence of the rape of Miss "B" and the robbery of the trio. We find these assignments without merit for a number of reasons: (1) The Trial Judge repeatedly warned the jury that the defendants were being tried only for the assault on Miss "A"; (2) the identification of the defendants was definitely put in issue on defendants' plea of an alibi, and the evidence of the assault on Miss "B" and of the robbery being relevant on the question of identification was not rendered inadmissible by the fact that incidentally it tended to prove a separate crime. *Mays* v. *State*, 145 Tenn. 118, 140, 141, 238 S. W. 1096.

The various assignments made on the sufficiency of the evidence, when considered in the light of proven facts as we have already stated them, are clearly without merit and require no further consideration.

To support his appeal. Scribner makes several assignments of error which are special to his trial and not mentioned in the other briefs. These assignments are: (1) In the action of the Trial Judge in dismissing certain pleas in abatement; (2) on the refusal of the Trial Judge to charge certain special requests.

█ Facts pertitnent to the dismissal of the pleas in abatement were these: When Scribner was arraigned on August 25, 1947, he had no lawyer and the Court appointed for his defense an able member of the Nashville Bar. This attorney, in agreement with the attorneys

representing Turner and Taylor, entered a general plea of "Not Guilty" for Scribner, as did the attorneys for the other two defendants, and the three attorneys all agreed with the Attorney General that defendants should go on trial on November 17, 1947, or some seven weeks after the day of arraignment. Some weeks later, Scribner's mother employed Scribner's present counsel and counsel for Scribner who had been appointed by the Court was excused from further service or from making further defense. Clearly when Scribner's present attorney took over his defense he was bound by steps already taken by his predecessor. On September 10, 1947, nineteen days after the indictments and sixteen days after the arraignment defendant Scribner filed a dilatory plea in abatement undertaking to attack the panel and void the indictment. The learned Trial Judge sustained a motion by the State to dismiss the plea in abatement first on the ground that it was filed sixteen days after arraignment and plea of not guilty and nineteen days after the indictment and, secondly, on the ground that the defendant and his counsel had not exercised diligence and that they had been guilty of inexcusable delay in filing the plea. This action of the Trial Judge is assigned as error. The plea in abatement is not before us for review since it was stricken from the record by order of the Trial Judge and is not incorporated in a Wayside Bill of Exceptions as is necessary under our practice. *Sams* v. *State,* 133 Tenn. 188, 180 S. W. 173. However, since counsel for Scribner says in his brief "It is therefore clear that the issue resolves itself into whether or not the plea in abatement was filed at the earliest possible time," we will confine our review to that proposition. One of the grounds for the motion for

the new trial was that the Trial Judge had erred in dismissing the plea in abatement, and when the motion was being heard no doubt recognizing that at the time the defendants stood under sentence of death, the Trial Judge before passing on the legal or technical objections to the plea went fully into its merits and heard the evidence on both sides. Thereafter he refused a new trial and so affirmed his former action in overruling the plea. Not only did this evidence show that the plea was without merit so far as any racial prejudice was concerned, but it also showed that at the time of arraignment the defendant was represented by competent counsel and that in agreement with counsel for the other two defendants, Turner and Taylor, pleas of not guilty were entered for all three defendants and that, further, by agreement with the State time was given for the preparation of the case and the date of trial set on November 17th, more than a month and a half after the date of the arraignment on August 25. There is no showing that counsel appointed for the defendant was not experienced and competent, but, on the contrary, it is shown that he is an able member of the Nashville Bar, with years of experience in criminal law gained from practice generally and especially from service in the office of the Attorney General of Davidson County. All that the record shows is that when Scribner's present counsel was employed and took over the defense, he had a different idea of how that defense should be appropriately conducted. However, he failed to take an essential step to carry the idea into effect. Being otherwise occupied, he sent an assistant to file pleas in abatement, but made no attempt whatever to secure leave of Court to withdraw the plea of not guilty which had then been authorized by the de-

fendant and filed for more than two weeks. The record discloses that no effort to withdraw the plea of not guilty was ever made. This was an essential preliminary step before the plea in abatement could be considered. Caruthers History of a Law Suit, 6th Ed., sec. 169. *State v. Cole*, 28 Tenn. 626, 628; *Turner v. State*, 89 Tenn. 547, 15 S. W. 838; *Gardner v. Quinn*, 154 Tenn. 167, 289 S. W. 513.

A plea to an indictment against a negro assailing the constitution of the grand jury, finding and returning the same as a true bill, upon the ground that the jury was composed wholly of whites to the exclusion of Negroes, was filed too late where it was filed nine days after return of the indictment. *Chairs v. State*, 124 Tenn. 630, 139 S. W. 711. Where the defendant pleaded not guilty and then continued the case until the next term, it is then too late to introduce or file a plea in abatement alleging the incompetency of one of the grand jurors. *State v. Deason*, 65 Tenn. 511. Clearly the facts here do not meet the rule laid down in *Pennel v. State*, 122 Tenn. 622, 125 S. W. 445, that objection to the grand jury and its composition must be made at the earliest opportunity after knowledge of the indictment. Compare *Dietzel v. State*, 132 Tenn. 47, 177 S. W. 47. We think the Trial Judge was fully justified in dismissing the plea in abatement because defendant was bound by the plea of not guilty and because the delay in filing the plea in abatement showed lack of diligence and an entire absence of any extenuating circumstances.

On account of the gravity of the offense and the punishment, we have disregarded the failure of the defendant Scribner to comply with our decisions and properly prepare and file a Wayside Bill of Exceptions, which

was necessary for the presentation of the plea in abatement, but we decline to consider assignments of error directed at the action of the Trial Court in refusing certain special requests because neither the charge to the jury nor the special requests are properly incorporated in the Bill of Exceptions or identified as being a part of the record by signature of the Trial Judge. This is indispensible to permit our review. *Fine* v. *State*, 183 Tenn. 117, 191 S. W. (2d) 173; *Huddleston* v. *State*, 66 Tenn. 55; *Battier* v. *State*, 114 Tenn. 563, 86 S. W. 711; *Railway & Light Co.* v. *Marlin*, 117 Tenn. 698, 99 S. W. 367. And the same authorities prevent our consideration of that part of the charge which dealt with Scribner's "infamy" and which is made a basis of one of the assignments of error.

All assignments of error are overruled, the judgments are affirmed, and the date of execution is fixed for the 31st day of August 1948.

All concur.