Edward Wilke, Appellee, v. Emmett Moll, Trading as Moll Furniture and Undertaking Company, Appellant.

Term No. 49F12.

Opinion filed May 20, 1949.

Released for publication June 29, 1949.

JOHNSON & JOHNSON, of Belleville, for appellant.

LINDAUER, LINDAUER & PESSIN, of Belleville, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

In a negligence action filed in the circuit court of St. Clair county, the plaintiff appellee, Edward Wilke, obtained a $10,000 judgment against the defendant appellant, Emmett Moll, doing business as Moll Furniture and Undertaking Company. Appellee's complaint sought recovery of damages from the appellant as the result of personal injuries and property damage sustained by the appellee in a collision involving appellee's car and appellant's ambulance. Appellant answered said complaint and filed a counterclaim. Upon appellee pleading to said counterclaim, a jury trial was had resulting in a verdict in favor of the appellee as stated above. Appellee was found to be "not guilty" of charges by appellant in his counterclaim. Motions for judgment notwithstanding the verdict and for new trial filed by the appellant were overruled by the lower court. With this state of facts existing, an appeal has been perfected to this court.

The accident in question occurred April 10, 1948, approximately 80 feet east of the intersection formed by the Illinois State Highway No. 15 and a public highway

known as the Green Mount Cemetery road. The state highway, a two-laned concrete roadway, runs in a general east-west direction. The Green Mount Cemetery road is an oil surfaced road running generally in a north-south direction. Appellant was driving west on said highway at the time of the accident. Appellee had approached the highway from the south driving on the said Green Mount Cemetery road and had turned to the east on said highway. The town of Belleville is located three miles west of said intersection while the town of Mascoutah is to the east.

Appellant contends that the lower court should have directed a verdict and that the verdict of the jury is against the manifest weight of the evidence. The oral evidence as presented is conflicting. The testimony of the appellee is as follows: "When I came to the Belleville-Mascoutah Road I made a stop and looked both ways and there was one coming pieceways down the hard road from the east. After I made the stop I got my automobile onto the hard road and drove to the east on toward Mascoutah." "When I turned on there, when I got in front there I put it in low and made a stop. I put her in low and then in second and then high. I was going in high and I was pieceways on there, I don't know how far but I was going in high, and then somebody passed me in front of me and I seen he was going to hit me. I wanted to turn off my side and I couldn't make it. The other car came from Mascoutah. I only saw one car at first, then I seen one coming pretty fast down the road from Mascoutah, then he passed the other car up and he was on my side of the road. The accident happened on the south side of the road; all of my car was on my side. One car was north side and then this other car passed them up and went on my side."

Julia Gramm, witness for the appellee and driver of the car passed by appellant's ambulance says: "I was going toward Belleville on the right-hand side of

the road and of the center mark. I never saw anything of an ambulance until it crawled up alongside of me. At that time I was going 35 or 40 miles per hour. The ambulance was going to pass me. I saw a car coming from the oiled road to my left, but I can't recall as to whether it stopped or not. The ambulance came along; I was on my side of the road; that car came, and at the same time there was a crash and something flew in front of me and I took over to the ditch and went on over. When this crash occurred the ambulance was in the act of passing my automobile.''

On the other hand appellant and his passenger, testified that they had passed the car driven by Julia Gramm and returned to the north side of the highway prior to the accident. They said that appellee failed to stop at the stop sign before entering the highway and then drove his car into the north half of the highway. Appellant and his passenger testified that at the time of the accident they were entirely on their side of the road but that appellee was still in their lane.

Appellant does not contend that the oral evidence was not conflicting, but earnestly urges that the photographic evidence of the car and ambulance taken after the accident reveals conclusively that appellee's version of the accident was not possible. Appellant argues that pictures of the cars showing the damage to each car establishes that the ambulance struck appellee's car from an approximate broadside position, thus showing that appellee was on the north side of the pavement going in a southerly direction to get to the south side of the pavement when struck by the ambulance. Appellee testified that in the few moments prior to the actual collision he was trying to get off his side of the road. The left front of the ambulance struck the left front or left side of the car.

The force of appellant's contention in this respect depends upon a determination of the precise angle at which the cars collided. If this angle was ap-

proximately a ninety degree angle or broadside, it would support appellant's theory, and if approximately a one hundred and eighty degree or headon angle, it would support appellee's theory. We have carefully examined the photographs of the car and ambulance and from them we are unable to determine with any degree of precision the angle at which the vehicles met. Therefore, this question, as well as the question of the determination of the credibility of the witnesses, was for the jury. The same conclusion is true with respect to the positions of the car and ambulance after they came to a stop.

With the evidence clearly in conflict by the testimony of the drivers of each motor vehicle and with testimony corroborating each driver's story, this court is unable to say as a matter of law that the verdict of the jury in favor of the appellee is against the manifest weight of evidence. Appellant's contention that the lower court erred in refusing to grant the motions for a directed verdict must necessarily fall with the above ruling of this court.

Appellant also urges the well-established principle of law that where a case must be determined upon conflicting testimony, the jury should be accurately instructed. The error complained of is that appellee's instructions No. 1 and No. 3 given by the lower court do not limit the jury to the negligence charged in the complaint. For instance, instruction No. 1 reads in part: "If you find from the preponderance of the evidence that defendant drove his said automobile in a negligent manner". . . . It is true, of course, that these instructions did not specifically limit the negligent acts of the defendant to those as charged in the complaint. However, instruction No. 6 of appellee given by the court lists the negligent acts of the defendant as charged in the complaint and provides, "In order for plaintiff to recover upon plaintiff's charge that the defendant was guilty of negli-

gence, the plaintiff must prove one or more of the above charges by the greater weight of the evidence." The rule is well established that the instructions are to be read as a series and that, if all the instructions, when considered as a series, fairly and correctly state the law, no error has been committed. *People v. Falley,* 366 Ill. 545; *Smith v. Seelbach,* 336 Ill. App. 480. When appellee's instructions No. 1 and No. 3 are read in connection with appellant's No. 6, we do not see how the jury could have been confused or mislead.

Appellant also insists that the verdict of $10,000 is excessive and the result of passion and prejudice. Testimony of the appellee indicated that he was earning approximately $150 a month prior to the accident and that he had been unable to do any kind of work since the accident. In the nine months' period existing between the date of the accident and date of trial, appellee lost some $1,350 in wages, with a hospital bill of $479.60, a doctor bill of $200, car damage of at least $300, and an ambulance bill of $5, appellee sustained out of pocket damages of approximately $2,350. From the accident appellee sustained multiple fractures of the pelvic bone, internal injuries and general contusions. He spent 63 days in the hospital, used crutches over a month after leaving the hospital and used a cane subsequently for two months.

Appellee's doctor, when asked what effect the injuries received would have on heavy manual labor, testified that the patient could completely recover but that he would have to take his patient's word since it was all subjective. Appellee's testimony at the time of the trial was that he still suffered from sciatic pains and that he still was unable to perform heavy labor. He also exhibited to the jury swelling in both feet. From the medical testimony, this swelling would indicate trauma and injury to blood vessels in the pelvic region. Inasmuch as the doctor testified in regard to complete recovery that you would "have to

take the patient's word for it,'' the question of permanency of injury was one for the jury to decide. The testimony also revealed that appellee had gone through the third grade of school and was trained for no other work than that of common labor. His occupation previous to the accident was loading one-hundred pound sacks into boxcars. In view of the facts stated, we are unable to hold the verdict to be one of passion and prejudice.

For the reasons assigned, the judgment of the lower court will be affirmed.

*Judgment affirmed.*

CULBERTSON, P. J., and SCHEINEMAN, J., concur.