STATE of Delaware

v.

Amy S. GROSSBERG, Defendant.

Nos. IN96–12–0127, IN96–12–0128.

Superior Court of Delaware,
New Castle County.

Submitted: July 3, 1997.
Decided: July 3, 1997.

Peter N. Letang, Paul R. Wallace, and Thomas E. Brown, Deputy Attorneys General, Department of Justice, Wilmington, for the State of Delaware.

Laura Davis Jones of Young, Conaway, Stargatt & Taylor, Wilmington and Raymond M. Brown of Brown & Brown, P.C., Newark, New Jersey, for Robert C. Gottlieb, Esquire.

Laura Davis Jones of Young, Conaway, Stargatt & Taylor, Wilmington, Rikki J. Klieman of Klieman, Lyons, Schindler & Gross, Boston, Massachusetts, Robert C. Gottlieb, Commack, New York, and Eugene J. Maurer, Jr., Wilmington, for Amy S. Grossberg.

**OPINION**

RIDGELY, President Judge.

This criminal action involves allegations that co-defendants Amy S. Grossberg and Brian C. Peterson committed Capital Murder in the First Degree, 11 *Del.C.* § 636(1), and Murder by Abuse or Neglect in the First Degree, 11 *Del.C.* § 634, of their newborn son in Newark, Delaware. Presently before the Court is the State's motion seeking sanctions against Robert C. Gottlieb, Esq., one of the counsel for defendant Grossberg, and/or a revocation of his admission *pro hac vice* for violations of the Delaware Lawyers' Rules of Professional Conduct and an order of this Court limiting pretrial publicity. The State also requests sanctions against defendant Grossberg as the Court deems appropriate.

## I. FACTUAL BACKGROUND

On November 21, 1996, this Court initiated a conference with counsel for the State and the defendants because of extensive national and local media coverage of this case. The extent of the intense media interest was described by Charles Slanina, Esq., one of the defendant Grossberg's counsel as "including not only just the local papers in Delaware, New Jersey, and Pennsylvania but also national papers such as the *New York Times* and the *Washington Post,* virtually every radio and television station, both locally and nationally, many syndicated programs,

would-be authors, producers and others."[1] Based upon the level of interest and the content of the coverage, counsel for defendant Grossberg concurred that an order of this Court limiting pretrial publicity was appropriate.[2] All counsel further stipulated that unless such an order was entered, there was a substantial likelihood of material prejudice to the parties' rights to a fair trial.[3]

The Court entered an order limiting pretrial publicity which precluded counsel for the State and counsel for Defendants from public comment about these cases except in accordance with Rule 3.6 of the Delaware Lawyers' Rules of Professional Conduct. This rule states in part that "[a] lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

In the order limiting pretrial publicity the Court also precluded all investigators, law enforcement personnel, employees or other persons assisting or associated with counsel for the State from making extrajudicial statements that counsel for the State would be prohibited from making under Rule 3.6. Further, the Court ordered that counsel for the State and Defendants promptly make all appropriate investigators, law enforcement personnel, employees of the State of Delaware, Department of Justice and "any other persons assisting or associated" with the prosecutors or defense counsel in these cases aware of the Order.[4]

1. Transcript of November 21, 1996 conference ("Nov. 21, 1996 Tr.") at p. 3.

2. *Id.* at 4.

3. *Id.* at 6.

4. *Id.* at 7–8. At this conference Mr. Slanina stated that the Order did not address the family members of the two defendants. When he expressed concern that a family member could act as a "straw man" for pretrial publicity the Court responded:

I'm going to leave it this way today, counsel. There may or may not be certain constitutional issues on the extension of the Order to family

On January 3, 1997 the State requested the Court to expand the Order to provide that "parties make no comment to the media other than on scheduling matters." During a January 15, 1997 conference, the Court inquired directly of counsel as follows:

> THE COURT: The remaining issue, Counsel, which I intend to rule upon very soon is the application of the State to expand the order limiting pre-trial publicity. Before I address that in any final fashion, I would like to focus, as a practical matter, on your expectations regarding further media appearances in this case and the impact of those upon your time and the Court's time.[5]

Defense counsel then made a series of material representations to this Court. On behalf of defendant Grossberg, Charles M. Oberly, III, Esq., said:

> MR. OBERLY: We do not want to be wasting time forging these motions and spending clients money which can best be used in other aspects of the case. We intend to abide by 3.6, and I'm hoping with the avoidance of this hearing, and if we can reach bail, there won't be any more hearings in this case for a long period of time. I think it's something we can resolve without any further difficulties. *We do not intend to go on any television shows, conduct any extensive interviews; we intend to abide by 3.6,* and I ask, to the extent that Mr. Letang, that I or Kathy or Chip, to any extent if we have not done that, let us know and we'll see if we can work that out among ourselves. (emphasis added).[6]

members. But, at this point, I would state that I do expect counsel to advise family members of the Court's intent, and also that you advise them my intent in entering this Order and that you advise them of the content of the Order as it now exists.

If there is any further application, you may make that in writing.

*Id.* at 9.

5. Transcript of January 15, 1997 conference ("Jan. 15, 1997 Tr.") at p. 7.

6. *Id.* at 8.

Jack T. Litman, Esq. on behalf of defendant Peterson agreed:

> MR. LITMAN: I will reiterate what Mr. Oberly said and that includes everyone on the defense side, *all of us will abide by 3.6* and that anything that has to be brought to the Court's attention will, and I'm almost sure it will not because we're all professional lawyers and all realize what's at stake. *No one is running around giving interviews or the like because we have other things that will consume our lives.* And I think the matter will be left to professional and good attorneys on both sides of this case.[7]

After hearing these representations, the Court informed counsel in writing that it was satisfied with the form of the Order as written. The Court denied the State's application.[8]

On May 7, 1997 Charles M. Oberly, III, Esq., moved for the admission of Robert C. Gottlieb, Esq. to practice in this action *pro hac vice.* Mr. Gottlieb's experience includes service as an Assistant District Attorney in Manhattan for close to four years. Since 1983 he has been in private practice representing persons charged with crimes in several states other than Delaware. His sworn affidavit which accompanied the motion acknowledged he would be bound by the Delaware Lawyers' Rules of Professional Conduct. On May 12, 1997 this Court admitted him to practice.[9]

Within days of his admission and without any disclosure to the Court that defense counsel's prior representations of January 15 would be ignored, Mr. Gottlieb was on television speaking to the venire and others about this case. On May 28, 1997 Philadelphia television Channel 10 broadcast his statements that "Amy didn't commit a crime. She didn't commit a crime." Near this time Mr. Gottlieb arranged for himself, defendant Grossberg and her parents to be interviewed by Barbara Walters for an ABC News "20/20" broadcast.

By letter dated May 30, 1997, Mr. Gottlieb wrote the Court directly about the recently recorded ABC News "20/20" interview. He assured the Court and opposing counsel that there was "strict adherence to all Court orders." He expressly represented that he, defendant Grossberg and her parents "refused and did not discuss the evidence pertaining to this case or expected testimony."

The ABC News "20/20" interview with Barbara Walters was aired on June 6, 1997. During the course of this Mr. Gottlieb again stated his personal opinion. He told Ms. Walters, "Amy should not have been charged. Amy is not guilty." He added, "You know it's never too late to do what is right based on the evidence. And it's only after time and over time that you really find out what a case is about. It's our hope that they'll take this opportunity and take a fresh look at the case."

Although Mr. Gottlieb precluded inquiries about what happened on or immediately before the date of the alleged offenses, under his direction defendant Grossberg responded to Barbara Walters' questions on what she as a little girl wanted to be, what the last months had been like, her feelings about co-defendant Brian Peterson, whether she was ever sick, nauseous or tired the preceding summer, whether she felt during the summer as if she were gaining weight, the regularity of her menstrual cycle, her relationship with her parents, how she felt when she was rushed to the hospital on the date of the alleged murder, what prison was like, her visit to the baby's grave, and her mourning of the loss of the baby. Defendant Grossberg added: "It was part of me. My heart breaks. I would never hurt anything or anybody, especially something that could come from me." When asked, "[w]hen Delaware prosecutors say that you are a baby-killer, what do you say," she answered: "It's the furthest thing from the truth. The furth-

---

7. *Id.* at 9.

8. *State v. Grossberg,* Del.Super., ID No. 9611007818, Ridgely, P.J. (ORDER) (Jan. 15, 1997).

9. Docket No. 94.

est thing. I wouldn't hurt anybody or anything, especially something of mine."

During the "20/20" interview the parents of Defendant Grossberg also spoke under Mr. Gottlieb's direction. They described their daughter as "warm and sensitive and caring," her background as a camp counselor, her being a good student and never having a detention in high school or a parking ticket, how she appeared the previous summer, their close relationship with her, her seizures at the hospital on the date of her admission and her prison experience before being released on bail, including how she helped other inmates. Mrs. Grossberg described her daughter as someone who "wouldn't hurt her baby, anybody's baby."

## II. THE PARTIES' CONTENTIONS

The State argues that Mr. Gottlieb's orchestrated media events were in direct contradiction of representations made to this Court on behalf of his client and were contrary to the letter and spirit of this Court's order limiting pretrial publicity and the professional rules of conduct. Mr. Gottlieb contends that he committed no violation of the order or of the professional rules and that a finding of contempt is "inapposite." The State also contends defendant Grossberg violated the order. She responds through separate counsel that she is not restrained by the present order, that the Court rejected efforts to include parties in the order, and that it is her First Amendment right to address the media regardless of the terms of the order.

## III. DISCUSSION

 It is beyond question that defense counsel has a responsibility not only to his client but to the Court. The Preamble to the Delaware Lawyers' Code of Professional Responsibility describes a lawyer as a "representative of clients, an officer of the legal system and a public citizen having a special responsibility for the quality of justice." As

recognized by the U.S. Supreme Court in *Gentile v. State Bar of Nevada:*[10]

> Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial, particularly an emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer.

> \* \* \* \*

> He is an intimate and trusted and essential part of the machinery of justice, an "officer of the court" in the most compelling sense. *In re Sawyer,* 360 U.S. 622, 666, 668 [79 S.Ct. 1376, 1397, 1399, 3 L.Ed.2d 1473 (1959)] (Frankfurter, J., dissenting, joined by Clark, Harlan, and Whittaker, JJ.)

The Delaware Supreme Court has described one of the responsibilities of an officer of the Court as follows:

> An attorney acting as an officer of the court, has a duty to respond with complete candor to court inquiries. *See* Delaware Lawyers' Rules of Professional Conduct, Rule 3.3. Counsel may not, knowingly or otherwise, engage in conduct which may reasonably be perceived as misleading either to the court or to opposing counsel.[11]

 This duty includes a responsibility to promptly inform the Court and opposing counsel of any development which renders a material representation to the Court inaccurate. As the commentary to Rule 3.3 recognizes: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." This is one of them. The rules do not change when substituted counsel appear for a defendant nor do their past representations to the Court evaporate. Indeed, substituted counsel is bound by the actions of his predecessors.[12] Thus, Mr. Gottlieb had an affirmative duty to abide by his predecessors' representations or disclose to the Court and opposing

**10.** 501 U.S. 1030, 1072, 111 S.Ct. 2720, 2743, 115 L.Ed.2d 888 (1991).

**11.** *State v. Guthman,* Del.Supr., 619 A.2d 1175, 1179 (1993).

**12.** *Sampeer v. Boschma,* 369 Mich. 261, 119 N.W.2d 607, 610 (1963); *Greenfield v. Philles Records, Inc.,* 160 A.D.2d 458, 553 N.Y.S.2d 771, 772 (1990); *Turner v. State,* 187 Tenn. 309, 318, 213 S.W.2d 281, 284 (1948).

counsel why he believed he did not have to, so that opposing counsel and counsel for the codefendant could be heard.[13] By orchestrating the local and national television appearances, Mr. Gottlieb engaged in conduct which directly contradicted the express representations of record on behalf of his client.

Although Mr. Gottlieb represented to this Court in writing that defendant Grossberg and her parents "did not discuss [during the "20/20" interview] the evidence pertaining to the case or expected testimony," the Court's review of the interview reveals otherwise. There was discussion of events and circumstances before and after the alleged offense which could be relevant to the defendant's state of mind, an essential element of the offenses charged. Without any doubt the interview did address the character and propensities of defendant Grossberg as seen by herself and her parents. Setting aside the prospect of character evidence on the issue of guilt, the "details of the commission of the offense *and the character and propensities* of the offender" will be expected testimony if there is a capital penalty hearing in this case.[14] (emphasis added). Mr. Gottlieb's representation to this Court was inaccurate.

Turning next to Mr. Gottlieb's statements on Channel 10 and during the "20/20" interview, it is plain that they convey his personal opinion as to the innocence of defendant Grossberg. This Court's order incorporated Rule 3.6 of the Delaware Lawyers' Rules of Professional Conduct which clearly states that such statements by a lawyer are of the sort "ordinarily" likely to have a "substantial likelihood of materially prejudicing" a pending criminal proceeding. This is so because "lawyers' statements are likely to be received as especially authoritative because lawyers have special access to information through discovery and client communications."[15] Mr. Gottlieb timed his statements for maximum impact to coincide with his entry into the

case as an experienced criminal defense lawyer and former prosecutor. He knew or should have known that the change in counsel, coupled with an interview of his client, would rekindle public interest and provide him a significant audience within the venire. The impact of his statements was maximized by the context of prime-time national television only 97 days before the scheduled trial. Mr. Gottlieb has acknowledged that he made these statements with "full consideration" of this Court's order. I find that Mr. Gottlieb's statements of his personal opinion were proscribed by the Court's order limiting pretrial publicity and Rule 3.6 of the Delaware Lawyers' Rules of Professional Conduct.

Finally, with regard to Mr. Gottlieb's role in the interviews of defendant Grossberg and her parents, a lawyer may not violate or attempt to violate Rule 3.6 by assisting or inducing another to do so nor may he violate that Rule through the acts of another.[16] Statements relating to the character of a party are identified by Rule 3.6(b)(1) as "ordinarily" likely to have a "substantial likelihood of materially prejudicing" a proceeding. Any preparation by Mr. Gottlieb of his client and her parents for a television interview should have been limited to those areas which he himself would have been permitted to comment.[17] Otherwise, Rule 3.6 is meaningless.

For the foregoing reasons, the Court concludes pursuant to Superior Court Criminal Rule 63(e) that the admission *pro hac vice* of Robert C. Gottlieb, Esq. should be revoked as inappropriate and inadvisable. Having determined this, the Court chooses to go no further than this public reprimand because of Mr. Gottlieb's background and the references the Court has received about him.

 Defendant Grossberg objects to this revocation of admission to practice. However, there is no merit to her contention that the Sixth Amendment right to counsel

---

**13.** An issue the parties would have been permitted to address is whether their representations constituted an agreement among counsel enforceable under Superior Court Civil Rule 90(c).

**14.** *See* 11 *Del.C.* § 4209.

**15.** *Gentile*, 501 U.S. at 1074, 111 S.Ct. at 2744.

**16.** DEL LAWYERS' RULES OF PROFESSIONAL CONDUCT Rule 8.4(a).

**17.** Pennsylvania Bar Assoc. Committee on Legal Ethics and Professional Responsibility, Inquiry No. 94–27 (March 7, 1994).

requires Mr. Gottlieb's admission *pro hac vice* to continue no matter how he has conducted himself. Defendant Grossberg has other competent Delaware counsel. There is an overriding interest here, namely the practice of law before this Court with the requisite candor, compliance with its orders, and adherence to the Delaware Lawyers' Rules of Professional Conduct. The Sixth Amendment was never intended to override this Court's "broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." [18]

\* \* \* \*

■ Regarding the State's application for sanctions against defendant Grossberg, none will be imposed today because the defendant was not included within the parameters of the November 21, 1996 order limiting pretrial publicity. Previously, the Court found it unnecessary to expand the order, in part, because of the express representations made by counsel on January 15, 1997 which were not adhered to by either substitute counsel or the defendant herself.

■ After reconsidering the continuing and extensive media coverage of this case, defendant Grossberg's recent willingness to promote herself and her defense on national television (with all that such may imply to the detriment of her codefendant), the Court finds no lesser alternative than to extend the application of the order to the defendants and all persons assisting or associated with defense counsel. This extension is necessary to protect each defendant's respective right to a fair trial as well as the State's interest in conducting trials before fair and impartial juries.[19] Before taking this step I have carefully considered the lesser alternatives traditionally available such as a change of venue and postponement of the trial. With the national publicity of this case, a change of venue would serve no purpose. Nor would postponement of the trial because of the likelihood of continuing publicity. Neither voir dire nor jury instructions can address in a sufficient way the threat posed by extrajudicial statements which will materially prejudice the trial.

## IV. CONCLUSION

Accordingly, the admission *pro hac vice* of Robert C. Gottlieb, Esq. to practice before this Court is **REVOKED.** The application for sanctions against defendant Grossberg is **DENIED.**

The November 21, 1996 order limiting pretrial publicity is amended to expressly apply to defendants Grossberg and Peterson. It shall also apply to all persons assisting or associated with the prosecutors or defense counsel in these cases.

**IT IS SO ORDERED.**

---

18. *State v. Kavanaugh*, 52 N.J. 7, 243 A.2d 225, 232 (1968).

19. The Court rejects defendant Grossberg's contention that the First Amendment precludes any restrictive order. The United States Supreme Court stated in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18, 104 S.Ct. 2199, 2207 n. 18, 81 L.Ed.2d 17 (1984):

Although litigants do not "surrender their First Amendment rights at the courthouse door," *In re Halkin*, 194 U.S.App.D.C. [257], at 268, 598 F.2d [176], at 186 [1979], those rights may be subordinated to other interests that arise in this setting. For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant. See *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 563 [96 S.Ct. 2791, 2804, 49 L.Ed.2d 683] (1976); *id.*, at 601 [96 S.Ct. at 2823], and n. 27 (Brennan, J., concurring in judgment); *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 310–311 [97 S.Ct. 1045, 1046–1047, 51 L.Ed.2d 355] (1977); *Sheppard v. Maxwell*, 384 U.S. 333, 361 [86 S.Ct. 1507, 1521, 16 L.Ed.2d 600] (1966). "In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104, n. 21 [101 S.Ct. 2193, 2202, n. 21, 68 L.Ed.2d 693] (1981).