IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY SESSION, 1998

FILED

November 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9702-CR-00076 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | UNICOI COUNTY |
| VS. | ) | |
| | ) | HON. ARDEN L. HILL |
| TERRY DEAN SNEED, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Robbery, Aggravated |
| | ) | Kidnapping, Aggravated Rape) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF UNICOI COUNTY

FOR THE APPELLANT:

RAYMOND C. CONKIN, JR.
320 Cherokee St., Suite B
Kingsport, TN 37660

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

DAVID CROCKETT
District Attorney General

STEVEN R. FINNEY
Assistant District Attorney General
Carter County Courthouse Annex
Elizabethton, TN 37643

LISA NIDIFFER
Assistant District Attorney General
Courthouse
Erwin, TN 37650

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Terry Dean Sneed, appeals as of right from a Unicoi County jury verdict convicting him of aggravated robbery, aggravated kidnapping, aggravated rape, and two counts of aiding and abetting aggravated rape.[1] The trial court sentenced him to a total of one hundred and twenty-four years; while the sentences for the rape convictions qualify as Range II, multiple offender, the other sentences are Range III, persistent offender. The Defendant appeals his conviction. We affirm the judgment of the trial court.

The Defendant argues eight issues on appeal: (1) that the evidence in the record is not sufficient to support a finding that the Defendant is guilty of aiding and abetting aggravated rape beyond a reasonable doubt; (2) that the evidence in the record is not sufficient to support a finding that the Defendant is guilty of aggravated rape, aggravated robbery, and aggravated kidnapping beyond a reasonable doubt; (3) that the trial court erred in allowing the victim's pretrial statement to be introduced as evidence and made an exhibit which was accessible to the jury during deliberations; (4) that the trial court erred in allowing the State to amend the indictment on the day of trial; (5) that the trial court erred in overruling the Defendant's motion to dismiss two counts of the indictment, which he argues were erroneously drawn and duplicitous in nature; (6) that the trial court erred by instructing the jury on the issue of flight; (7) that the trial court

---

[1] We note that both the indictment and the judgment form entered by the trial court refer to this crime as "aiding and abetting aggravated rape." Under the 1989 revision of our criminal code, what was formerly the crime of "aiding and abetting" is now known as "criminal responsibility for the conduct of another." See Tenn. Code Ann. § 39-11-402. However, on appeal, Defendant does not raise as an issue any irregularity concerning terminology, and even if he had done so, the error would not be fatal. For the sake of clarity, we will employ the terminology used by the trial court for the remainder of this opinion.

erred in overruling the Defendant's motion for mistrial after a police officer testified that the co-defendant had given statements which led the officer to believe that the Defendant was guilty; and (8) that the trial court erred in finding the Defendant competent to stand trial.

The victim in this case was an employee at the Stop-In Market in Carter County, where she generally worked the night shift from eleven o'clock p.m. until seven o'clock a.m. On November 29, 1992 at approximately one-thirty a.m., shortly after the victim's co-worker left for the night, leaving the victim alone in the store, two males entered the market. The two men, who were captured on video surveillance tape, were armed with knives. They approached the victim and demanded that she get a bag and fill it with all the money in the cash register. The victim testified that both men threatened to kill her if she did not cooperate, and the victim acceded to their demands. The men then dragged her from the store and forced her into a car, where the co-defendant, Billy Joe Smith, shoved her head to the floorboard and held it there.

The victim testified that the Defendant drove the car to a cemetery. At the cemetery, the Defendant and Smith began drinking Mad Dog 20/20, which they also forced the victim to drink at one point during the night. Smith ordered the victim to remove her clothes. At that time, the Defendant stated, "Just kill her. . . . [G]et it over with. I'm sick of hearing her cry." Smith then raped the victim at knifepoint on the ground outside while the Defendant watched from the car. The victim testified that immediately after the rape, the Defendant stated, "Give her up to me, it's my turn. Let me have her . . . . Damn it, Billy Joe, you said if I drove and did like you said that I could have her when you was done with her to do

whatever I wanted to." The Defendant, armed with a knife, next raped the victim in the front seat of the car. He then attempted to force her to perform fellatio. The victim testified that when she refused, the Defendant said, "I'd love to kill you . . . . I can't wait to see your blood flow . . . . I'm a son of satan and it wouldn't bother me a bit. I ought to kill you . . . . I've put five women up there in that grave and it wouldn't bother me to make you number six . . . . I blew one bitch's brains out for screaming." After the rape, the victim was sobbing, and the victim testified that the Defendant threatened to "chop [her] up and fry [her] on the hood of the car" if she did not quiet down.

Shortly thereafter, the two men forced her to hold a cigarette lighter so that they could see to divide up the money that they had taken from the Stop-In Market. Smith then raped the victim a second time on the ground outside, while the Defendant again watched from the car. Throughout the night and early morning, the two men threatened numerous times to kill the victim, and each one told the victim that he had a gun. The victim also testified that she felt what she believed to be a gun under the back seat of the car while she was being held down on the floorboard.

After the third rape, the three got back into the car, at which point the Defendant asked Smith if he could have a second turn at raping the victim. Smith refused. The victim testified that the three of them then sat in the car in silence for an hour or two so that Smith could "think." Finally, as the sun began to rise, Smith started the car and drove to the Roadway Inn in Johnson City, claiming that he and the Defendant would abduct the victim and have her help them rob banks.

According to testimony of the victim, Smith said, "We're going to be Clyde and you'll be Bonnie."

When they arrived at the motel, Smith held a knife to the victim's back while the Defendant, leaning against the open door of the car, called to a motel employee in the parking lot to ask whether there were any vacant rooms. The employee refused them a room, citing their drunkenness, and while the Defendant was arguing with the employee, the victim slid out of the car and ran to the motel office. The employee later testified that he could identify the Defendant and Smith as the men he had seen that morning at the motel.

The victim testified that while she was running to the motel office, she heard the men running and she heard one of them say, "Let's get the f__k out of here." The motel employee stated that the men were driving too fast for him to get a license tag number.

Upon reaching the motel office, the victim called 911 and summoned the police. The whole ordeal had lasted approximately seven hours. When the police arrived, she went with them to the Johnson City Police Department to give a statement detailing the events of the night. While at the police department, she identified not only the Defendant from a photo line-up, but also was shown and identified the car driven by the perpetrators on the night of the crime. At the Johnson City Hospital, she submitted to medical testing, which was later introduced at trial in the form of a rape kit.

At trial the State introduced evidence recovered from the cemetery, including a Mad Dog 20/20 bottle, the cigarette lighter, and a knife. Although DNA evidence linked Smith to the crime, the police were unable to link the Defendant with the crime through DNA evidence.

However, with regard to the identity of the Defendant, the victim testified that during the car ride, the Defendant called Smith by his first name, to which Smith responded, "God damn it, Snuffy, you called me by my real name." A defense witness later testified that the Defendant has a tattoo that reads "Snuffy." The victim stated at trial that she did not recall seeing any of the Defendant's tattoos, but she also testified that he never took off his long-sleeved jacket. In addition, she identified the men on the video surveillance tape as the Defendant and Smith. Furthermore, although the Defendant appeared to have lost weight and had shaved his beard and shortened the length of his hair since the time of the crime, the victim, who testified that she had numerous chances to see the perpetrators' faces at close range during the night of her abduction, stated unequivocally that the Defendant was the same man who abducted and raped her.

I.

The Defendant first argues that the evidence is insufficient to support a jury verdict that he was guilty of aiding and abetting aggravated rape beyond a reasonable doubt. Under Tennessee law, "[a] person is criminally responsible for . . . the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the

offense . . . ." Tenn. Code Ann. § 39-11-402. The Defendant argues that he was not an active participant in the rapes of the victim by Smith. He argues that he was merely present while Smith raped the victim and in no way offered any assistance or aid to Smith during the rapes. He further argues that he did not take any action that would manifest a desire or intent to carry out the rapes.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[findings] of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). "Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court." State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Nor may this court re-weigh or re-evaluate the evidence in the record below. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978)).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. (citing State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983)). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982) (citing Cabbage, 571 S.W.2d at 835). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.

McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also Evans, 838 S.W.2d at 191 (citing Grace, 493 S.W.2d at 476); Tuggle, 639 S.W.2d at 914.

In the case at bar, the evidence presented by the State clearly contradicts the Defendant's assertion that he was not an active participant in the rapes perpetrated by Smith. The Defendant's statement, "[Y]ou said if I drove and did like you said that I could have her when you was done with her to do whatever I wanted to," shows that the perpetrators shared at least some pre-formed intent to act in concert in the commission of the rapes. Moreover, the Defendant actually drove the car to the cemetery where all three rapes occurred, and the Defendant remained armed with his knife during much of the evening and early morning. In fact, the Defendant himself urged Smith to kill the victim on at least one occasion. Therefore, viewing the evidence in light most favorable to the prosecution, there is clearly sufficient evidence for the jury to have found the Defendant guilty of aiding and abetting aggravated rape beyond a reasonable doubt.

II.

Second, the Defendant argues that the evidence was insufficient to support jury verdicts that he was guilty of aggravated rape, aggravated robbery, and aggravated kidnapping beyond a reasonable doubt. The basis of his argument is mistaken identity. He argues that no physical evidence links him to the scene of the crime. He also contends that the victim's identification of the Defendant is suspect since the majority of the abduction took place at night in darkness, the victim was in an excited state at the time of the crime, and she failed to notice tattoos on the Defendant's body.

As previously noted, because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. Tuggle, 639 S.W.2d at 914; see also Evans, 838 S.W.2d at 191 (citing Grace, 493 S.W.2d at 476). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e).

Despite the lack of physical evidence linking the Defendant to the crime, the victim positively identified the Defendant as her assailant. She spent approximately seven hours with her two assailants, and a few of those hours were spent in broad daylight. Additionally, she testified that she heard Smith call the Defendant by both his first name and his nickname. The victim's testimony alone would be sufficient to convict the Defendant. However, in this case, the victim's testimony was coupled with images captured by a video surveillance camera and an identification made by the motel employee. This issue is without merit.

### III.

Third, the Defendant contends that the trial court erred in allowing the victim's pretrial statement to be introduced and made an exhibit which was accessible to the jury during deliberations. The Defendant argues that although the admissibility of such a document is normally left to the discretion of the trial

court, the trial judge in this case abused his discretion. In his brief, the Defendant relies upon Tennessee Rule of Evidence 803(5), the hearsay exception regarding recorded recollections:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Tenn. R. Evid. 803(5).

The document in question is a statement by the victim taken by Officer Donna Haynes on the morning following the crime. At trial, the officer had trouble remembering portions of the victim's statement and was therefore allowed to refresh her memory using the typed statement. The record reflects that the document was first introduced by the State on direct and was subsequently used during cross examination. The State published the document to the jury and later moved to introduce it as an exhibit.

Although the document had already been published to the jury when the Defendant objected, the trial court should not have entered the document as an exhibit. Rule 803(5) plainly states that a memorandum or record used to refresh a witness's memory may be introduced as evidence but may not be introduced as an exhibit unless offered by an adverse party. Id. Here, the State moved to have the statement introduced as an exhibit.

However, despite this apparent error by the trial court, the Defendant has failed to demonstrate any prejudice caused by use of the statement during jury deliberations. For this reason, any error that the trial court may have made was harmless. <u>See</u> Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

IV.

Fourth, the Defendant argues that the trial court erred in allowing the State to amend the indictment on the day of trial. Specifically, the State moved to amend the aggravated kidnapping count to include the words: "so as to substantially interfere with the victim's liberty." The State also corrected the statutory citation listed in the indictment. The amended count reads as follows:

And these same Grand Jurors upon their same oath further present that BILLY JOE SMITH and TERRY DEAN SNEED, on or about the 29th day of November, 1992, in the County and State aforesaid, and before the finding of this Indictment, did unlawfully remove the victim from her place of employment, so as to substantially interfere with the victim's liberty, while the said BILLY JOE SMITH and TERRY DEAN SNEED were armed with a deadly weapon, to-wit: a Knife, in violation of Section 39-13-304 of the Tennessee Code Annotated, all of which is against the peace and dignity of the State of Tennessee.

(Emphasis added.) The Defendant argues that the amendments added an essential element to the crime without prior notice to the Defendant and without review of the grand jury.

Rule 7(b) of the Rules of Criminal Procedure states that "[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches." Tenn.

R. Crim. P. 7(b). Thus, at its discretion, a court may allow any amendment to an indictment that does not add an offense or substantially prejudice the rights of the defendant.

In the case at bar, it is our opinion that the Defendant did not experience surprise as a result of the amendments. The improperly cited Tennessee Code Annotated § 39-13-301 refers to the definitional portion of "Kidnapping and False Imprisonment." It should have been clear to the Defendant, from both the improperly cited section and the language of the count itself, that the charge referred to aggravated kidnapping. Moreover, although inserting the language, "so as to substantially interfere with the liberty of the victim," does add an essential element to the crime of aggravated kidnapping, as the Defendant contends, we do not believe that the additional language results in reversible error.

Moreover, despite the foregoing discussion, the Defendant in this case failed make an objection to the form of the indictment before trial. Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure requires that "[d]efenses and objections based on defects in the indictment, presentment or information" be raised before trial.[2] Tenn. R. Crim. P. 12(b)(2). Here, the Defendant raises the issue only on appeal to this Court.

More appropriately, not having raised the issue pre-trial, the Defendant could have moved for a continuance at the time opposing counsel presented the

---

[2] With some exceptions, which are noted in the rule. Tenn. R. Crim. P. 12(b)(2).

amendments to the court. When a defendant experiences actual surprise at trial resulting from an amendment to an indictment, a defendant should move for a continuance so as to allow time to prepare a defense to the new charges.[3] Here, the Defendant neither objected at the time of trial nor moved for a continuance. More importantly, however, after review of the record, we are not convinced that the Defendant experienced actual surprise as a result of the amendments.

V.

The Defendant's next argument also pertains to the indictment. He argues that the trial court erred in overruling the Defendant's motion to dismiss two counts of the indictment, which the Defendant argues were erroneously drawn and duplicitous in nature. The first two counts to which Defendant refers are identical:

> The Grand Jurors of the State of Tennessee, duly summoned and elected, empaneled, sworn, and charged to inquire in and for the body of the County aforesaid, in the state aforesaid, upon their oath, present that BILLY JOE SMITH heretofore, to wit, on or about the 29th day of November, 1992, in the County aforesaid, and before the finding of this indictment, did unlawfully sexually penetrate the victim, by forcing her to have sexual intercourse with him while the said BILLY JOE SMITH was armed with a deadly weapon, to-wit: a knife, and did thereby cause bodily injury to the said victim, and further, the said BILLY JOE SMITH, was aided and abetted in committing this aggravated rape of the victim by another person, Terry Dean Snead [sic], contrary to Tennessee Code Annotated, 39-13-502, and against the peace and dignity of the State of Tennessee.

---

[3] In addition, if the Defendant believed that the indictment did not adequately apprise him of the charges against him, he could have moved for a bill of particulars pursuant to Rule 7(c) of the Rules of Criminal Procedure, which states: "Upon motion of the defendant the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." Tenn. R. Crim. P. 7(c).

Again we note that the Defendant failed to object to the form of the indictment before trial, as required by Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure. Tenn. R. Crim. P. 12(b)(2). Nor did he move for a bill of particulars pursuant to Rule 7(c) of the Rules of Criminal Procedure. Tenn. R. Crim P. 7(c).[4] However, we will proceed to discuss the merits of this issue.

In arguing that the counts were erroneously drawn, the Defendant points to the fact that in counts one and two, initially Billy Joe Smith is charged with aggravated rape, while the Defendant is mentioned only later in the count as the person who aids and abets Billy Joe Smith in committing the rape. The Defendant argues that this does not afford him sufficient notice of the charges against him and therefore asserts that the indictment should be dismissed. While we agree with the Defendant that the language of the counts does not provide the clearest possible description of the crime, nor does it establish with complete precision the role of each perpetrator in the crime, we find that the language of the counts is sufficient to apprise the Defendant of the charges against him.

The Defendant's argument concerning the duplicity of the counts is less manifest. Although we are unable to ascertain the thrust of the Defendant's argument, we have examined both indictments and are unable to find error in them. "[A]s in the case of rape, where it appears that two or more persons acted together, aiding and assisting one another in the perpetration of successive rapes, or that the one committed the act and the other did not, but such stood by and aided and assisted the one in commission of such act, they may be jointly

---

[4] See supra note 3.

charged with the commission of such act." <u>Watson v. State</u>, 197 S.W.2d 802, 804 (Tenn. 1946) (citing 42 C.J.S. <u>Indictments and Informations</u> § 159). Moreover, the facts clearly support the commission of two separate rapes by Smith with assistance by the Defendant which were separated by both time and the rape of the victim by the Defendant. Facts such as those in the instant case provide adequate grounds for charging rape in two separate counts.

VI.

Sixth, the Defendant contends that the trial court erred by instructing the jury on flight. He argues that no evidence of flight was introduced at trial and that therefore, a jury charge on the issue of flight was improper.

The jury was provided with the following instruction on flight:

> The flight of a person accused of crime is a circumstance which, when considered together with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.

> The law makes no nice or refined distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.

> Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

This instruction on flight is almost identical to that provided in State v. Kendricks, 947 S.W.2d 875, 885 (Tenn. Crim. App. 1996). In Kendricks, this Court noted that the instruction was "in substantial accord with our pattern jury instruction, T.P.I.-- Crim. 42.18, which has been cited with approval by our Court." Id. at 886. Generally, the jury is "entitled to evaluate [evidence concerning flight] and determine whether flight was established and if so, whether an inference of consciousness of guilt arose." State v. Hill, 875 S.W.2d 278, 284 (Tenn. Crim. App. 1993) (citing Hall v. State, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979)).

As stated in the facts, immediately after the victim escaped from the car at the motel, one of the men was heard to say, "Let's get the f__k out of here." They then got back into their car and exited the parking lot, driving too fast for the motel employee to take down a license plate number. At trial, Unicoi County Criminal Investigator Ron Arnold testified that he spent approximately seven months interviewing the Defendant's family and searching for the Defendant in an attempt to apprehend him. We believe that this constitutes sufficient evidence to warrant the flight instruction. The language in the instruction provided allows for a broad spectrum of methods of flight and appears to encompass the behavior of the Defendant. Thus, the jury instruction on flight was appropriate in the instant case.

VII.

Seventh, the Defendant contends that the trial court erred in overruling the Defendant's motion for a mistrial after a police officer testified that the Defendant's co-defendant had given statements which led the police officer to believe the Defendant was guilty. The Defendant argues that the statement was

-17-

inadmissible hearsay and that in order to offer this statement into evidence, the State should have called co-defendant Smith to testify so as to satisfy the Defendant's right to confrontation.

The exchange at issue took place during the cross examination of Unicoi County Criminal Investigator Ron Arnold by defense counsel:

> Q. Now I believe you stated a moment ago somebody told you to be on the lookout for Terry Dean Sneed, or that Terry Dean Sneed might be involved. Is that correct, sir?
>
> A. That's correct.
>
> ...
>
> Q. What somebody told you?
>
> A. The co-defendant.

The Defendant immediately moved for a mistrial, arguing that a <u>Bruton</u> violation had occurred.[5] The trial court overruled the motion and gave the jury a curative instruction.

We find it unnecessary to delve into discussion of <u>Bruton</u> violations in the instant case as this matter may be resolved on other grounds: Officer Arnold's answer was elicited by counsel for the defense. Having elicited the objectionable response, counsel for the defense cannot now be heard to complain. From a reading of the record, we do not find here an intentional reference to the Defendant in an attempt by the defense counsel to compel the court to grant a

---

[5] <u>See</u> <u>Bruton v. United States</u>, 391 U.S. 123 (1968). In <u>Bruton</u>, the United States Supreme Court held that the admission of a co-defendant's confession implicating the defendant at a joint trial constituted prejudicial error. <u>Id.</u> at 126. The Court reasoned that because the co-defendant did not take the stand for cross examination, the defendant's constitutional right to confrontation had been violated. <u>Id.</u> The Court determined that a curative instruction to the jury did not serve to remedy the error. <u>Id.</u> at 137.

mistrial, as the State suggested at trial. The witness's statement of what the co-defendant told him was very general and vague. We find instead an error which was remedied with a curative instruction.

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This Court will not disturb such a ruling absent a finding of an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). Furthermore, we presume that the jury followed the trial court's explicit instructions not to consider the inappropriate comment. State v. Smith, 893 S.W.2d 908, 923 (Tenn. 1994). In light of the limited nature of the offending testimony and the trial court's prompt curative instruction, we find that the trial judge did not abuse his discretion in refusing to grant a mistrial. See State v. Dick, 872 S.W.2d 938, 944 (Tenn. Crim. App. 1993). Although we are unable to find any error on the part of the trial court, if any error was made, it was clearly harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

VIII.

Finally, the Defendant argues that the trial court erred in finding the Defendant competent to stand trial. On the day of trial, Defendant filed a pro se motion requesting "proper medication," claiming that without his medication, he was not competent to stand trial. The court conducted a hearing on the matter.

The court allowed the Defendant to testify on his own behalf outside the presence of the jury. The court also delayed proceedings to attempt to find the

Defendant's doctor, who proved to be unavailable. In the doctor's stead, the court called a pharmacist to testify, who testified that the anti-depressant medications the Defendant had been taking were generally used for mild anxiety "due to everyday life stresses." The record reflects that the Defendant had not been taking his medication for at least two months preceding trial. The court called to the stand a jailer from the Defendant's place of incarceration, and the jailer testified that the Defendant had not exhibited any form of abnormal behavior since he had stopped taking his medication. The Defendant introduced a letter from Assessment Services, dated November 8, 1994, stating, "It is important that Terry continues to receive his medications on a regular basis to maintain his competency." However, the State also entered into evidence a letter, dated August 3, 1995, from the Defendant's doctor, who wrote, "I do not feel that Terry Sneed needs to be taking Lorazepam." After having heard all testimony and having tried unsuccessfully to locate a prescription for the Defendant's medication, the court concluded that the Defendant's pro se motion should be denied:

> Based upon what I've heard here today from the pharmacist and from the jailer as to [the Defendant's] actions lately and the motions filed by Mr. Sneed were not timely filed, according to the . . . local rules, therefore, we're going to proceed with the trial without any Lorezapam. It would delay the trial too much, in my opinion, to try to get some doctor to prescribe Lorezapam for him, have it filled and get it in his system, so- and, therefore, we're going to go ahead without any medication for Mr. Sneed.

The Defendant correctly cites the test for determining the competency of a defendant to stand trial in Tennessee. In order to stand trial, a defendant must (1) be able to understand the nature and object of the proceedings against him, (2) be able to consult with counsel, and (3) be capable of assisting in the preparation of his defense. Mackey v. State, 537 S.W.2d 704, 707 (Tenn. Crim.

-20-

App. 1975); State v. Stacy, 556 S.W.2d 552 (Tenn. Crim. App. 1977). The determination of competency is within the discretion of the trial court. State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993). "The trial court's determination on competency will not be overturned absent a showing of an abuse of discretion." State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996). After careful review of the record, we conclude that all three prongs of the competency test have been met in the case before us. Furthermore, the Defendant has failed to demonstrate any prejudice resulting from his being denied medication on the day of trial.

The judgment of the trial court is affirmed in all respects.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
JOSEPH M. TIPTON, JUDGE